25 A.3d 270 (2011)
421 N.J. Super. 538
STATE of New Jersey, Plaintiff-Respondent,
v.
Corey MISURELLA, Defendant-Appellant.
No. A-1439-10T4.
Superior Court of New Jersey, Appellate Division.
Submitted June 8, 2011.
Decided August 26, 2011.
*271 Stein, McGuire, Pantages & Gigl, LLP, attorneys for appellant (Michael F. Martino, Livingston, of counsel and on the brief).
Carolyn A. Murray, Acting Essex County Prosecutor, attorney for respondent (Luanh L. Lloyd, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).
Before Judges ASHRAFI, NUGENT and KESTIN.
The opinion of the court was delivered by ASHRAFI, J.A.D.
Defendant Corey Misurella appeals from a judgment of conviction dated October 22, 2010, for driving while intoxicated (DWI), N.J.S.A. 39:4-50, after a trial de novo in the Superior Court. We affirm.
The relevant facts are that at 2:46 a.m. on September 23, 2007, State Police troopers were dispatched to the Garden State Parkway in East Orange to investigate a motor vehicle accident and to provide assistance. When they arrived, the troopers saw three damaged vehicles in the left and center lanes. Trooper Walsh testified at defendant's trial he believed a BMW had struck a black car that had stopped in the left lane of the Parkway, and then, a gray Honda driven by defendant had struck one of those cars.
The troopers observed a person lying in the shoulder of the roadway and other people standing or walking near the damaged cars. Defendant was "running around in the lanes and back and forth." Trooper Walsh made the following observations as he spoke to defendant about the accident:
There was an odor of an alcoholic beverage. His eyes were bloodshot. He washis demeanor seemed very excited. He used excessive profanity. He seemed nervous. He was inattentive to my questions. His eyeshis attention was bouncing from one
....
He was ... rambling on. He was, as I said, not answering direct questions initially, notwhen I would ask him questions he wasn't necessarily listening to what I was saying. After initially speaking with him we had asked him to sit on the embankment adjacent to the roadway. I had to ask him repeatedly to sit down, because he would get up and walk away from where we had told him to sit.
At one point he was running around the accident scene, literally running around the accident scene. I don't know what he was doing, but he was maybe conversing with other people who were there or his brother. I'm notI don't recall what he was doing specifically. But that's the level of agitation or excitement that he displayed.
For safety reasons, the troopers did not conduct roadside sobriety testing. The scene of the accident was at a curve down *272 a hill on the Parkway and rescue personnel were helping the injured and removing the vehicles. The troopers arrested defendant and the driver of the black vehicle and transported them in one police car to State Police barracks. According to Trooper Walsh, "the troop car smelled of the odor of a consumed alcoholic beverage." Breathalyzer testing shortly after 5:00 a.m. showed that defendant's blood alcohol content was .10 percent, above the legal limit for driving. See N.J.S.A. 39:4-50(a).
Defendant's municipal court trial in East Orange was adjourned eleven times from the initial trial date of October 10, 2007, until it was held on July 15, 2008-296 days from the date of defendant's arrest. After his conviction in the municipal court, defendant filed a notice of appeal on July 30, 2008, for trial de novo on the record in the Superior Court, Law Division. See R. 3:23-8(a). The Superior Court trial did not occur until October 22, 2010-798 days from the filing of the notice of appeal.
Defendant raises speedy trial and other arguments as follows:
POINT I
THE STATE HAS VIOLATED DEFENDANT'S DUE PROCESS RIGHTS, AND AS SUCH, THE CHARGE AGAINST HIM SHOULD BE DISMISSED.
POINT II
THE STATE LACKED SUFFICIENT PROBABLE CAUSE TO DETAIN AND ARREST DEFENDANT AND, ACCORDINGLY, ALL EVIDENCE THEREAFTER OBTAINED SHOULD BE SUPPRESSED.
POINT III
AS A RESULT OF THE STATE'S SPOLIATION OF EVIDENCE THAT WAS LIKELY TO RAISE A REASONABLE DOUBT OF DEFENDANT'S GUILT, THE COMPLAINT SHOULD BE DISMISSED.
To the extent these arguments pertain to the municipal court proceedings, we reject them for the reasons stated in the thorough and well-reasoned written decision of Judge Ramona Santiago in the Law Division dated August 30, 2010. Judge Santiago determined that defendant's right to a speedy trial in the municipal court had not been violated such that the charge must be dismissed, that the State Police had probable cause to arrest defendant for DWI, and that defendant had not been prejudiced by alleged spoliation of evidence in that the prosecution had lost the original videotape from the State Police dashboard camera that was introduced as an exhibit at the municipal court trial. The court's decision, however, did not address defendant's speedy trial and due process argument regarding the twenty-seven months that passed before disposition of his appeal and trial de novo in the Superior Court.
The relevant facts regarding the Superior Court proceedings are as follows. A few days after defendant's conviction in the municipal court, counsel for defendant wrote to the East Orange Municipal Court requesting the dashboard videotape introduced in evidence. At the time he filed the notice of appeal, counsel requested that the municipal court prepare and file relevant transcripts of the municipal court proceedings. On August 22, 2008, municipal court staff advised defense counsel that, because of a technical problem, there would be a delay in producing a compact disc of the sound recordings to be transcribed. On October 17, 2008, defense counsel was notified of another delay in providing trial transcripts. On February 4, 2009, defense counsel wrote to the municipal court inquiring about the transcripts. Defense counsel finally received *273 the transcripts on February 6, 2009-191 days, or about six months, after he filed the notice of appeal and made the request.
In the meantime, on January 6, 2009, the presiding judge of the Criminal Division for Essex County Superior Court executed a court-generated order dismissing defendant's appeal without prejudice for failing to file transcripts as required under Rules 3:23-8 and 2:5-3(a). The order of dismissal was not served upon defendant or the prosecutor.
Fifteen months later, in April 2010, defense counsel sent a paralegal to the Essex County Criminal Division office to check the status of the case. Counsel learned that the appeal was not being scheduled for disposition because it had been dismissed. The clerk's office refused to provide a copy of the order of dismissal to the paralegal because it had not been filed on the court's docket. Defense counsel received a copy ten days later and promptly filed a motion to vacate the dismissal, which the Superior Court granted on May 21, 2010. Thus, 469 days of the delay were caused by the court's dismissal of the appeal without prejudice, but also without notice to the parties.
On May 25, 2010, defense counsel wrote to the municipal court because the video-tape exhibit had not been forwarded to the Superior Court as part of the record. On June 25, 2010, the prosecutor ordered another copy of the tape from the State Police because the original exhibit could not be found. Defense counsel objected to the use of a new copy rather than the original exhibit. By letter dated August 13, 2010, the State wrote to the Superior Court that it had "located the video tape introduced and marked as S-1 in the defendant's municipal appeal trial below." The prosecutor's letter stated the videotape was found in the filing cabinet of a prosecutor who had retired earlier that year.[1] Thus, 80 days of delay were caused in part by the search for the missing videotape exhibit.
On August 25, 2010, Judge Santiago heard oral argument on defendant's appeal of his pretrial motions to dismiss the charges and to suppress evidence. The judge declined to hear the trial de novo at the same time because defendant's brief was limited to the pretrial issues. On August 30, 2010, Judge Santiago entered an order and issued her letter-opinion denying defendant's appeal of the municipal court's pretrial rulings.
On October 22, 2010, Judge Santiago heard the factual merits of defendant's de novo appeal, at the conclusion of which she found defendant guilty of driving while intoxicated. A judgment order to that effect was entered on the same date and sentence was imposed. As a first DWI offender, defendant was sentenced to pay a fine of $300 and other statutory money penalties totaling $358, twelve hours at the Intoxicated Drivers Resource Center, and seven months' driver's license suspension. Judge Santiago denied defendant's motion to stay execution of the sentence.
The State concedes that the right not to be subjected to unreasonable delay applies to an appeal, State v. Le Furge, 222 N.J.Super. 92, 98, 535 A.2d 1015 (App. Div.), certif. denied, 111 N.J. 568, 546 A.2d 498 (1988), and consequently, to a trial de *274 novo on appeal to the Superior Court from a municipal court conviction. See also Simmons v. Beyer, 44 F.3d 1160, 1169 (3d Cir.1995) (unreasonable delay in an appeal as of right violates a defendant's right to due process).
In Le Furge, supra, 222 N.J.Super. at 98, 535 A.2d 1015, we stated that the same framework and standard apply to evaluating undue delay on appeal as applies to a defendant's right to a speedy trial in the trial court. The constitutional standard for a speedy trial was established by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and applied by our Supreme Court in State v. Szima, 70 N.J. 196, 200-02, 358 A.2d 773, cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976).
In Barker, the Court set forth a "balancing test ... in which the conduct of both the prosecution and the defendant are weighed" to aid in determining when a defendant's right to a speedy trial under the Sixth Amendment has been violated. 407 U.S. at 530, 92 S.Ct. at 2191-92, 33 L.Ed.2d at 115-17. The Court identified four factors that should be examined: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Ibid.; accord Szima, supra, 70 N.J. at 200-01, 358 A.2d 773.
In this case, the first of those factors, the length of the twenty-seven month delay from the notice of appeal to the trial de novo, weighs heavily in favor of defendant's argument that his right to speedy disposition on appeal was violated.
The reasons for the delay are largely, but not entirely, attributable to the courts and the prosecution. First, the East Orange Municipal Court could not produce timely transcripts, requiring about six months from the end of July 2008 to the beginning of February 2009 to complete transcripts. Next, the Superior Court dismissed the appeal for lack of transcripts without serving notice of the court-initiated dismissal on defendant or the prosecution. Fifteen months passed until April 2010 without any activity on the appeal. From May to August 2010, a period of three months, the delay was caused mostly by the municipal court's and the prosecution's inability to find the videotape exhibit admitted at the trial, which turned out to have been stored and forgotten in a prosecutor's file cabinet. The reason for the last two months of delay, from August to October 2010, was that the initial briefing before the Superior Court focused on pretrial issues rather than the facts presented at trial.[2]
We reject the State's argument that defendant was solely to blame for all these delays. We are particularly troubled by the Superior Court's dismissal of the appeal without giving notice to defense counsel and the prosecutor both before and after the order of dismissal was issued. For fifteen months, neither attorney was notified that the court had dismissed the appeal. Because the municipal court had stayed execution of defendant's sentence after his conviction, defendant continued to be licensed to drive during that time although he had been convicted of DWI and no court proceeding was then pending. The Superior Court had a responsibility to notify the attorneys of the dismissal so that appropriate action could be taken.
But defendant and defense counsel were not completely free of blame. We also attribute responsibility to defendant and *275 counsel for the fifteen-month period of inactivity. During the time the appeal was dismissed, defendant did not make any inquiry or pursue the case. Had he done so, that period of delay would have been significantly shortened. Because execution of sentence had been stayed, defendant apparently did not have a strong incentive to seek a speedy disposition of his appeal in the Superior Court.
In fact, the third factor under the Barker analysis weighs heavily against defendant's argument that his speedy trial rights were violated. There is no evidence on this record that defendant asserted a right to speedy disposition of the de novo appeal at any time from filing the notice of appeal in July 2008 until the Superior Court heard argument on pretrial issues in August 2010. As the Supreme Court stated in Barker, supra, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, and we repeated in Le Furge, supra, 222 N.J.Super. at 99, 535 A.2d 1015, "failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a fair trial."
Also important, defendant was not prejudiced by the delay. His defenses had already been presented in the municipal court; they could not have been impaired by the delay. See id. at 99, 535 A.2d 1015. A trial de novo in the Superior Court is heard on the record made in the municipal court, usually without new evidence or rehearing of live witnesses. See R. 3:23-8(a). Furthermore, defendant suffered no detrimental consequences from his conviction, the sentence having been stayed during the time of appeal to the Superior Court. The "hardship" of waiting for disposition of his appeal, standing alone, "is insufficient to constitute meaningful prejudice." Le Furge, supra, 222 N.J.Super. at 99-100, 535 A.2d 1015 (citing United States v. Loud Hawk, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640, 654 (1986)).
Balancing the four factors set forth in Barker, we conclude that defendant's constitutional rights were not violated by the delay in the disposition of his trial de novo on the record.
Affirmed.
NOTES
[1] With respect to defendant's spoliation argument, defense counsel argued the exhibit in the municipal court trial had been marked D-2 and not S-1. He could not represent to the court either way whether the videotape filed for the trial de novo was identical to or different from the one admitted in evidence by the municipal court. The prosecution insisted it was the same recording, and Judge Santiago accepted that representation. She viewed the videotape and determined it was not probative of any issue on appeal.
[2] Because defendant's conviction was a per se violation based on the blood alcohol reading of .10, the trial de novo itself did not involve any significant issues.