# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3756-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

G.N.W.,[1]

    Defendant-Appellant.

_____

Submitted April 10, 2024 – Remanded April 17, 2024
Resubmitted September 6, 2024 – Decided October 9, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 14-07-1248.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Cody T. Mason, Deputy Public Defender II, of counsel and on the brief).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant

---

[1] We use the defendant's initials as we did in our prior opinions. See State v. G.N.W. (G.N.W. II), A-3756-21 (App. Div. April 17, 2024) (slip op. at 2).

Prosecutor, of counsel and on the brief; Joseph M. Competello, Assistant Prosecutor, on the brief).

PER CURIAM

In November 2016, a jury found defendant G.N.W. guilty of twenty-one counts of sexual assault committed against adolescent boys. He was sentenced to forty-six years imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, Parole Supervision for Life pursuant to N.J.S.A. 2C:43-6.4, Megan's Law restrictions, fines, and penalties. The time between defendant's arrest and trial was six years, eleven months, and twenty-nine days. He appeals from a Law Division order denying his motion to vacate the convictions and dismiss the superseding indictment with prejudice on speedy trial grounds.[2]

In our most recent opinion in this matter, we remanded for the trial court to complete the fact-finding needed to resolve defendant's constitutional claim. G.N.W. II (slip op. at 1-5). This case now returns to us for disposition on the merits of defendant's speedy trial contentions. After carefully considering the expanded record in light of the parties' arguments and governing legal

---

[2] This appeal was initially taken from a November 12, 2021 Law Division order. A written Law Division opinion issued on August 6, 2024 supplemented and amplified that order pursuant to our remand instructions. We note that several Law Division judges have presided over this case at various stages before, during, and after the jury trial. We refer to them collectively as the trial court.

A-3756-21

principles, we affirm the denial of defendant's motion to dismiss the superseding indictment with prejudice on speedy trial grounds substantially for the reasons set forth in the trial court's August 6, 2024 written opinion.

I.

We briefly summarize the pertinent procedural history. In January 2020, we affirmed defendant's convictions and sentence, but remanded to the trial court to carefully scrutinize the time between defendant's arrest and trial and to undertake the fact-sensitive analysis required under Barker v. Wingo, 407 U.S. 514 (1972). State v. G.N.W. (G.N.W. I), A-0496-17T1 (App. Div. Jan. 28, 2020) (slip op. at 2-3). We acknowledged the seven years between defendant's arrest and trial is "[b]y any objective measure . . . a substantial period of time . . . requir[ing] careful scrutiny." Id. at 18. We determined it is "conceivable, if not likely, that the current record is not adequate to permit a fulsome review of the Barker factors. The circumstances explaining certain periods of delay, for example, may be outside the current record, in which event further factfinding may be necessary." Id. at 22. Accordingly, we instructed the trial court to:

> (1) catalog and compartmentalize all of the discrete periods of delay, (2) determine and evaluate the specific reasons for delay, and, (3) as to delay attributed to the State, determine whether the delay was the product of

3

> the case's complexity or other legitimate justification, or else was the product of purposeful delay tactics or mere inaction. The Law Division should apply the Barker factors in light of those findings. . . . Should the court conclude defendant's speedy trial rights were violated, it shall vacate defendant's judgment of conviction and dismiss the superseding indictment.
>
> [Id. at 23.]

On the initial remand, the trial court did not hear additional testimony, argument, or receive additional briefing. The court applied the four-factor Barker test, concluding in a sixteen-page written decision that the length of the delay was not unreasonable due to the nature of the charges, the case's complexity, and the additional alleged illegal conduct defendant committed. The State conceded, however, the trial court "did not divide the time between arrest and trial into discrete periods of delay nor determined whether the specific periods were attributable to the State, to defendant, or to the court system." Accordingly, we remanded the case again with a deadline and specific instructions for the trial court to convene a hearing at which both parties could present information and make oral argument. To prevent yet further delay in resolving defendant's speedy trial claim, we retained jurisdiction. G.N.W. II (slip op. at 5).

4

Pursuant to our remand instructions, the trial court conferenced the matter with the parties and set an expedited briefing schedule. The State filed a certification from the trial assistant prosecutor and later supplemented its submission with a catalogue accounting for every day from defendant's arrest to the start of the trial along with supporting documentary evidence. Defendant filed a brief.

The trial court heard oral argument on June 28, 2024. Although there was general agreement on the periods of delay and the general reasons for delay (e.g., pretrial motions), the parties disputed whether certain periods of delay were attributable to defendant, the State, or the trial court.

On August 6, 2024, the trial court issued a thirty-five-page written opinion, along with an appendix. As per our mandate, the opinion outlines the discrete periods of delay, accounting for each day from arrest to the start of the trial and providing a reason and party attribution for each event. The trial court also amplified its analysis of the Barker factors accounting for the additional findings and concluding that the indictment's dismissal was not warranted. In reaching that conclusion, the trial court emphasized "the majority of the delays, totaling 1,410 days," were attributable to defendant while 367 days were attributable to the State.

5

The trial court found the overall length of the delay was "not unreasonable due to the nature of the charges, the complexity of the case, and additional alleged illegal conduct on the part of . . . [d]efendant." The trial court rejected defendant's argument that the delay was a result of the State's lack of diligence in conducting the investigation. The court found the delay resulted from numerous circumstances beyond the State's control, such as the transfer of the case "to several judges," defendant's "voluminous," "baseless," and "relentless" motions, the dismissal of defense counsel, and the need for a mental competency evaluation. The trial court also rejected defendant's contention he was prejudiced by "outrageous governmental conduct" and "prosecutorial misconduct."

As noted, we retained jurisdiction and permitted both parties to submit supplemental briefs. In his initial merits brief, defendant raised the following contentions for our consideration:

> POINT I
>
> DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE ROUGHLY SEVEN-YEAR DELAY BETWEEN HIS ARREST AND TRIAL SUCH THAT DISMISSAL OF THE INDICTMENT IS REQUIRED.

6

A. The Roughly Seven-Year Delay Was Extraordinary, And The Remand Court Failed To Afford It Sufficient Weight.

B. Most Of The Seven-Year Delay Was Either Unexplained Or Due To Actions On The Part Of The Court Or The State, Thus Weighing In Favor Of A Violation, And The Remand Court's Limited Findings To The Contrary Were Clearly Mistaken.

C. Defendant Twice Clearly And Promptly Asserted His Right To A Speedy Trial, And The Remand Court Erred In Affording Those Efforts To Bring Himself To Trial Minimal Weight.

D. Defendant Was Presumptively And Actually Prejudiced By The Seven-Year Delay, During Which He Was Detained And The Memories Of Key Witnesses Faded, And The Remand Court Clearly Erred In Finding Otherwise.

Defendant raised the following contentions in his reply brief:

POINT I

DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE SEVEN-YEAR DELAY BETWEEN HIS ARREST AND TRIAL AND THE STATE'S ARGUMENTS TO THE CONTRARY ARE UNPERSUASIVE.

A. The Seven-Year Delay Was Extraordinary, Weighing In Favor Of A Violation And Reducing The Significance Of The Other Factors.

B. Most Of The Seven-Year Delay Remains Unexplained or Attributable To The State Or The Court.

7

C. Defendant's Two Assertions of His Right to a Speedy Trial Weigh Heavily In Favor Of Finding A Violation.

D. Defendant Was Presumptively And Actually Prejudiced By The Seven-Year Delay.

Defendant raises the following contentions for our consideration in the supplemental brief following the latest remand:

POINT I

DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE ROUGHLY SEVEN-YEAR DELAY BETWEEN HIS ARREST AND THE START OF TRIAL.

A. The Roughly Seven-Year Delay Was Extraordinary, Weighing In Favor Of A Violation

B. Most Of The Seven-Year Delay Remains Unexplained Or Due to the Court Or The State, Thus Favoring A Violation

C. Defendant Twice Asserted His Rights And The Trial Court Erred In Affording Those Efforts Minimal Weight

D. Defendant Was Prejudiced By The Seven-Year Delay And The Court Erred In Finding Otherwise

II.

We preface our analysis by acknowledging the legal principles governing this appeal. "The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states by the Due Process

8

Clause of the Fourteenth Amendment."  State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009) (citing Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967)).  "As a matter of fundamental fairness, excessive delay in completing a prosecution may qualify as a violation of a defendant's constitutional right to a speedy trial."  Ibid.  (citing State v. Farrell, 320 N.J. Super. 425, 445-46 (App. Div. 1999)).  Moreover, "'[a] defendant has no duty to bring himself to trial; the State has that duty'[.]" State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977) (quoting Barker, 407 U.S. at 527).

In determining whether a defendant's constitutional right to a speedy trial has been violated, courts consider the multi-factor balancing test set forth in Barker, which focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice to the defendant.  Barker, 407 U.S. at 530-31.

In State v. Cahill, our Supreme Court embraced the Barker four-factor test, holding that analytical paradigm "remains the governing standard to evaluate claims of a denial of the federal and state constitutional right to a speedy trial."  213 N.J. 253, 258 (2013).  The Cahill Court added, "[n]one of the Barker factors [are] determinative, and the absence of one or some of the factors

9

is not conclusive of the ultimate determination of whether the right has been violated." Id. at 267 (citing Barker, 407 U.S. at 533). "[T]he factors are interrelated, and each must be considered in light of the relevant circumstances of each particular case." Tsetsekas, 411 N.J. Super. at 10 (citing Barker, 407 U.S. at 533).

When, as in this case, the delay exceeds one year, the court presumptively should analyze all the Barker factors. Cahill, 213 N.J. at 265-66. We have previously cautioned, however, against deciding "how long is too long . . . 'by sole reference to the lapse of a specified amount of time.' " State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983) (quoting State v. Smith, 131 N.J. Super. 354, 360 (App. Div. 1974)). Legitimate delays, "however great," will not violate the defendant's right to a speedy trial if it does not specifically prejudice defendant's defense. Doggett v. United States, 505 US. 647, 656 (1992). Furthermore, it is well established that longer delays may "be tolerated for serious offenses or complex prosecutions." Cahill, 213 N.J. at 266. Moreover, it bears emphasis that "any delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation." State v. Long, 119 N.J. 439, 470 (1990) (quoting State v. Gallegan, 117 N.J. 345, 355 (1989)).

A-3756-21

Importantly for purposes of this appeal, we afford deference to the trial court's factual findings as to the assessment and balancing of the Barker factors. State v. Fulford, 349 N.J. Super. 183, 195 (App. Div. 2002). "We reverse only if the [trial] court's determination is clearly erroneous." Tsetsekas, 411 N.J. Super. at 10 (citing State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977)).

Applying that standard of review, we are satisfied the trial court in its August 6, 2024 written opinion accounted for every day that defendant was detained awaiting trial and attributed each period of delay to the party responsible for it. The documents in the trial court's appendix support those findings.

We also conclude the trial court properly applied the Barker factors. We note defendant contends the court did not adequately address the fourth Barker factor pertaining to prejudice caused by delay by not accounting for "oppressive pretrial incarceration" resulting in "humiliation," "anxiety and concern," and a "drain on resources." Defendant also contends the trial court did not consider "the delay's capacity to 'impair' [defendant's] defense." We are unpersuaded.

Notably, defendant has not explained with any specificity how the delay actually impaired his trial defense other than to note generally that the pretrial detention "prevented him from fully assisting with and presenting his defense."

11

While we acknowledge again that the seven year delay is "[b]y any objective measure . . . a substantial period of time . . . requir[ing] careful scrutiny," G.N.W. I (slip op. at 18), we are not prepared to presume the delay so impaired his trial defense as to overcome the other Barker factors militating against dismissal. See Cahill, 213 N.J. at 267 (noting "[n]one of the Barker factors [are] determinative, and the absence of one or some of the factors is not conclusive of the ultimate determination of whether the right has been violated.") (citing Barker, 407 U.S. at 533).

Nor are we persuaded by defendant's argument the trial court erred in considering his repeated violations of no-contact orders "[b]ecause neither the court nor the State explained why these events delayed the case[.]" Our review of the record shows the prosecutor did in fact offer a reasonable explanation for how defendant's repeated no-contact violations contributed to the delay. The prosecutor noted:

> [I]t does bear emphasis that any contact or violations [of] no victim contact orders, even if they did not have a direct impact upon this case ultimately at trial, that still is a basis for attributing delay to the defendant …
>
> [I]t [requires] additional review of what is alleged to have occurred by the State. It requires the State to consider ultimately what those communications with the victim may have on this trial. It could require the State to consider additional charges … to make legal

12

determinations as to whether the evidence can and should be submitted at this trial[.]

…

[T]hose are all actions that were taken on the part of this defendant that … required additional effort and consideration by the parties that had the defendant not done that … that would not have become an issue. So, that would be attributable to the defense.

We agree with the State that as a general proposition, prosecutors are permitted to thoroughly investigate possible new crimes. Cf. State v. Aguirre, 287 N.J. Super. 128, 133 (App. Div. 1993) ("Prosecutors should not be discouraged from thoroughly investigating possible crimes . . . ."). In this instance, defendant's persistent refusal to comply with a court order prohibiting contact with victims warranted follow-up investigation not only to determine whether new crimes were committed, but also to determine the impact of the no-contact violations on the victims' potential testimony.

We likewise reject defendant's contention the trial court erred in finding that, for purposes of constitutional speedy trial analysis, the trial commenced on October 13, 2016, when jury selection began rather than on when the jury was sworn seven days later. In State v. Amer, our Supreme Court stressed that "[j]ury selection is not a pretrial proceeding, but a critical stage of the trial itself." 254 N.J. 405, 427 (2023). As the Court noted, moreover, the speedy

trial provision of the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26, "explicitly specifies that 'a trial is considered to have commenced when the court determines that the parties are present and directs them to proceed to voir dire . . . .'" Id. at 428 (quoting N.J.S.A. 2A:162-22(a)(2)(b)(i)).

Finally, we also are unpersuaded by defendant's contention the trial court erred by according only "minimal weight" under the third Barker factor to defendant's two attempts to assert his right to a speedy trial. Defendant argues the trial court's decision was based on the fact he waited "over a year" and "sixteen months" to make the assertions.[3] We agree with defendant there is no categorical time limit for asserting the right to a speedy trial, after which the assertion is not cognizable under Barker analysis. The pertinent question, however, is "whether the defendant actively asserted his right, which requires more than merely moving to dismiss after [a] delay has already occurred." United States v. Keith, 61 F.4th 839, 853 (10th Cir. 2023) (internal citations and quotations omitted). In United States v. Garcia, the Tenth Circuit Court of Appeals recently commented, "[t]he third Barker factor weighs against a

_____

[3] Defendant first asserted his right to a speedy trial in a motion to dismiss the indictment filed on October 28, 2014. Defendant filed a second motion to dismiss on speedy trial grounds on December 8, 2015.

14

defendant who weakly asserts his speedy-trial right long after he could have[.]" 59 F.4th 1059, 1068 (10th Cir. 2023) (quoting United States v. Black, 830 F.3d 1099, 1120 (10th Cir. 2016)).

In this instance, the trial court did not rely reflexively on the delay in asserting speedy trial rights, but instead considered the assertions in context with the overall manner in which defendant litigated the case. Cf. United States v. Tranakos, 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire."). The record shows defendant was advised that he was delaying his own trial by filing motions without a proper foundation in law or fact. Defendant's meritless motions practice reached a point where the trial judge was constrained to enter an order prohibiting defendant from filing repetitive, voluminous motions that would further delay the trial. We are satisfied the trial court in its remand opinion properly "assese[d] the totality of the proceedings in considering the amount of time that passed before a defendant should have raised his speedy trial rights." United States v. Gordon, 93 F.4th 294, 308 (5th Cir. 2024).

In sum, defendant has not demonstrated that the trial court's August 6, 2024 ruling was "clearly erroneous" as to warrant further appellate intervention.

To the extent we have not specifically addressed them, any additional arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3756-21